UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ORLANDO VIERA,<br><br>　　　　　　　　　　Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, et al.,<br><br>　　　　　　　　　　Respondents. | Case No.: 26-cv-115-RSH-DDL<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

On January 8, 2026, petitioner Luis Orlando Viera filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), as well as a motion for a temporary restraining order ("TRO"). ECF Nos. 1, 2.

Petitioner is a citizen of Cuba. ECF No. 1 at 2. He was ordered removed to Cuba on July 18, 2008, but was not thereafter removed. *Id.*; ECF No. 6 at 1. On October 28, 2024, Petitioner was placed by DHS on an order of supervision. ECF No. 6 at 1. DHS arrested Petitioner on October 30, 2025. *Id.* at 2. Petitioner is detained at the Otay Mesa Detention Center in San Diego, California. *Id.*

Petitioner challenges the lawfulness of his detention, and asks for an order directing his release. ECF No. 1 at 16. As set forth below, the Court grants the Petition.

//

1

## I. LEGAL STANDARD

Title 28 of the U.S. Code, Section 2241, provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A prisoner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## II. ANALYSIS

Under the Immigration and Nationality Act, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3).

DHS regulations permit the release of an alien on an order of supervision where, among other circumstances, there is no significant likelihood that the alien will be removed in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13. An alien who violates the terms of such an order of supervision may be returned to custody. *Id.* § 241.13(i)(1). Additionally, even where there has been no violation, DHS "may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). The regulations provide for certain procedures upon revocation: "Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [DHS] will conduct an initial informal interview promptly after his or her return to [DHS] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* § 241.13(i)(3).

///

Respondents offer the declaration of Carlos Nunez, a Supervisory Detention and Deportation Officer employed by ICE in its Miami Field Office. ECF No. 6-2 ¶ 1. The declaration states that "[a]round th[e] time" of Petitioner's arrest, "he was provided with written notice of the Revocation of Release and an opportunity to respond to the revocation during an informal interview." *Id.* ¶ 9. Along with the declaration, Respondents submit a form entitled "Notice of Revocation of Release," containing a proof of service stating that the form was served on Petitioner the day after his arrest. ECF No. 6-1 at 3. Mr. Nunez's declaration does not identify the notice, or state that this notice was served on Petitioner; and Mr. Nunez's name does not appear on the notice or proof of service. Respondents do not expressly take a position on whether such service, if it was indeed made on the day after Petitioner's arrest, would comply with the requirement that "*[u]pon revocation*, the alien will be notified of the reasons for revocation of his or her release." 8 C.F.R. § 241.13(i)(3) (emphasis added).

Additionally, Respondents have not established that Petitioner received an "initial informal interview promptly after his … return to … custody to afford [him] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Mr. Nunez states Petitioner was given an opportunity to respond the notice during an informal interview, but Mr. Nunez provides no further information about this interview or its timing. ECF No. 6-2 ¶ 9. The declaration does not reflect whether or how Mr. Nunez has personal knowledge of such an interview; instead, the declaration recites in general terms that "[t]his declaration is based on my personal knowledge and experience as a law enforcement officer and information provided to me in my official capacity as a SDDO at the ICE ERO Miami Field Office, as well as my review of government databases relating to Petitioner Luis Orlando Viera." *Id.* ¶ 3. Respondents have not presented the Court with a basis to rely on Mr. Nunez's conclusory statement that Petitioner promptly received an informal interview.

Respondents, while not disputing that the procedures of 8 C.F.R. § 241.13(i)(3) apply here, have not expressly asserted or shown that those procedures were fully followed

in Petitioner's case. Nor do they request an opportunity to submit further evidence on that question. Instead, Respondents argue that "[e]ven assuming the agency's compliance with the regulations fell short, Petitioner has not established prejudice nor a constitutional violation." ECF No. 6 at 3. However, government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003). Courts have determined that where DHS fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered. *See, e.g.*, *Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *8 (D. Md. Aug. 25, 2025); *M.S.L. v. Bostock*, No. 6:25-cv-1204-AA, 2025 WL 2430267, at *10–11 (D. Or. Aug. 21, 2025); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 165–66 (W.D.N.Y. 2025); *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017). This Court reaches the same conclusion and will therefore grant the Petition and order Petitioner's release.

The Petition also requests a permanent injunction regulating the terms under which Petitioner may be detained in the future or removed to a country other than Cuba. ECF No. 1 at 16-17. However, Petitioner has not established that he is entitled to such a relief on a habeas petition. The Court declines to issue the requested injunction.

## III. CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**. Respondents are ordered to immediately release Petitioner from custody, subject to the conditions of his preexisting order of supervision. In light of this disposition, the Court **DENIES** as moot Plaintiff's application for a temporary restraining order [ECF No. 2]. The hearing currently scheduled for February 5, 2026 is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: January 23, 2026

Hon. Robert S. Huie
United States District Judge